## CHURCH v. CHICAGO M. & ST. P. RY. CO.

1. A passenger held a ticket, issued by the appellant company, from Milwaukee, Wis., to Artesian, S. D. Such ticket gave the passenger the right to transportation, subject to such reasonable rules and regulations as the company had a right to make, concerning the running of its trains and the route over which they should run.

2. It is a reasonable regulation for a company operating direct, and indirect and circuitous, lines of road between two points, to require that through passengers, traveling upon a simple contract to carry from one point to the other, should go by the most direct route.

3. Such reasonable regulation becomes a part of the contract of carriage.

4. Failure by the company to notify a passenger of such regulation does not affect the contractual rights of the parties, so as to entitle the passenger to ride between such points on other lines of the company than those established as the through route by such regulation.

5. The fact that the passenger told the company's gate keeper at the Milwaukee depot that she desired to go to Artesian by way of Prairie du Chien and Mitchell, and he directed her to the proper train without informing her that she would have to change at Canton, a junction 500 miles distant, or that she could not go on that ticket from Canton to Artesian by way of Mitchell, did not entitle her to go that way, against the regulation of the company.

6.  Respondent's wife procured a ticket from Milwaukee, Wis., to Artesian,
    S. D.  The company had two established routes between these points,
    —one, which she took, by way of Prairie du Chien, Canton, and Egan.
    By this route she should have changed cars at Canton, S. D., for Egan.
    She did not change, but continued on the train west, and insisted upon
    her right to go by way of Mitchell and Woonsocket, over which lines
    the company had no through route.  Refusing to pay fare, she was
    ejected.  *Held*, that while the failure of the company to notify her to
    change at Canton might, if a neglect of an imposed duty, be the ground
    for damages, it did not entitle her to ride upon such ticket over the in-
    direct route, by way of Mitchell and Woonsocket; and an instruc-
    tion to the jury that she was lawfully on such train over such route if
    she did not know of such regulation, and that the conductor had no
    right to put her off, was error.

            (Syllabus by the court.)   Opinion filed Nov. 19, 1894.

Appeal from circuit court, Sanborn county.    Hon. D.
HANEY, Judge.

Action for wrongfully ejecting plaintiff's wife from defend-
ant's train, and for expenses and loss of services arising there-
from.    From a judgment entered on a verdict for plaintiff, de-
fendant appeals.    Reversed.

The facts are stated in the opinion.

*Preston & Hannett* (*Burton Hanson*, of counsel) for appel-
lant.

When a ticket is purchased giving the right of passage
from one station to another, the contract is to carry from that
station to the other by the established route.  Bennett v. Rail-
road, 69 N. Y. 42; Platt v. Railroad, 63 Wis. 511; Blanchard v.
Railroad, 9 Am. & Eng. Railroad Cases 307; Adwin v. Railroad,
60 Barb. N. Y. 590; Railroad v. Randolph, 53 Ill. 510; Cheney
v. Railroad, 11 Metcalf 121; Hose v. Railroad, 15 Fed. 57; Gib-
son v. Railroad, 30 Id. 904.    The existence of a fact is not
proven by evidence of a subsequent condition which is merely
consistent with its existence.    Trapwell v. City, 39 N. W. 884.

No brief for respondent.

KELLAM, J.    This action was brought by respondent
against appellant to recover damages on account of expense

incurred, and loss of services of his wife, Julia A. Church, whom he alleges was lawfully on one of appellant's trains, and was wrongfully ejected therefrom. Respondent and his wife resided in the town of Artesian, in this state, a station on an east and west line of appellant's road. In September, 1889, having been for several months in the state of Michigan, she desired to return to Artesian. Her husband procured and had sent to her the return coupon of a Grand Army excursion ticket, both coupons of which were good for a trip from Artesian to Milwaukee and return. It was shown by the company, and was not disputed, that it had two established routes from Milwaukee to Artesian, over either of which a passenger might make a continuous passage from the former to the latter place,—one by way of Prairie du Chien, McGregor, Canton, and Egan, thence west to Artesian; the other by way of La Crosse, thence west, through Egan, to Artesian. Mrs. Church took the train at Milwaukee for the first-named route, and proceeded as far as Canton, where, instead of changing cars for Egan, as she should have done to continue on the route named, she remained on the train with the intention of going to Mitchell, there changing and going north to Woonsocket, and thence, after another change, east to Artesian. After passing Canton, the conductor, finding her still on his train, examined her ticket, and informed her that she was on the wrong train, that she should have changed at Canton, and that her ticket would not take her to Mitchell. She insisted that her ticket entitled her to go by way of Mitchell and Woonsocket, refused to pay her fare, and was put off the train at Worthing, the next station. Appellant contends that the facts disclosed show that respondent and his wife were practicing a fraud upon the company in procuring and using this excursion ticket, sold at reduced rates to enable purchasing parties to attend the Grand Army reunion at Milwaukee, under circumstances and for a purpose which they well knew were not contemplated by the company. They also insist that there was no evidence justifying the court in submit-

ting to the jury the question of actual damages. There was also some conflicting testimony as to the deportment of the conductor, and the manner of her removal from the train, upon which is based a claim of undue and excessive force; but as we think the trial court erroneously instructed the jury as to her rights and the company's duty in the premises, which might and probably did influence the jury, for which the judgment must be reversed, we notice only such error.

The first question which the facts in this case naturally suggest is this: Did Mrs. Church's ticket entitle her to ride from Canton to Artesian by way of Mitchell and Woonsocket? The court instructed the jury as follows: "The rules of the defendant company required that she should change cars at Canton, and proceed to Artesian by way of Egan. If Mrs. Church knew this rule, or if she was informed, at or before reaching Canton, that the rules of the company required her to change at Canton, she was unlawfully on the train at Worthing, and plaintiff cannot recover if she was removed from the train in a proper manner; but if she did not know of such rule, and was not informed of it, she was lawfully upon the train at Worthing, and the conductor had no right to put her off. Mrs. Church was not bound to inquire whether she should change cars at Canton; but if, by any means, she had been informed that she should make such change, she should have made it, and should not have remained on the train west of Canton." Mrs. Church's right to transportation by the appellant company was just what her contract gave her. That contract was to carry her from Milwaukee to Artesian, subject to such reasonable rules and regulations as the company had a right to make concerning the management and running of its trains and the routes over which they should run. She was entitled to be carried through with ordinary and reasonable dispatch, but she had no right, under such contract, to select her route, as against a rule or regulation of the company prescribing a different and more direct route, if such regulation were a reasonable

one. The law is well settled that a railroad company, as a common carrier, may prescribe and enforce regulations for the conduct of its business in carrying passengers, so long as such regulations are reasonable. Regulations which have uniformly been held reasonable by the courts extend over a wide range of details, and it certainly ought not to be held unreasonable to allow a company, operating direct and indirect lines of road between two points, to require, by general rule, that passengers traveling upon a simple contract to carry from one point to the other should go by the most direct route. The right of the company to make such a regulation can hardly be doubted, in view of its reason and justice, and certainly not in view of the many adjudications sustaining regulations which would seem much more unnecessary and arbitrary. Such regulations become and are a part of the contract of carriage. In Dietrich v. Railroad Co., 71 Pa. St. 436, the court says: "So far as they are expressed, the terms are binding of course; but such tickets are not the whole contract, which must be gathered, so far as not expressed, from the rules and regulations of the company in running its trains." In Johnson v. Railroad Corp., 46 N. H. 221, it is said "that, in the absence of any special agreement, the parties are deemed to have contracted with reference to the established existing usage." In the case before us there was no evidence of any usage inconsistant with the rule of the company. In Railroad Co. v. Randolph, 53 Ill. 515, the court says: "When a passenger purchases a ticket, he only acquires the right to be carried according to the custom of the road.     *     *     * He does not acquire the right to insist that the company shall send him on a special train, or out of the customary course of their road." This language is quoted and approved in Plott v. Railway Co., 63 Wis. 516, 23 N. W. 412. Bennett v. Railway Co., 69 N. Y. 594, was a case where facts were quite correspondent with those in the case before us. The plaintiff bought a ticket from "Lockport to Troy." Between Rochester and Syra-

cuse the company operated two lines, one 23 miles shorter than the other.    A rule of the company required through passengers to go by the shorter route.    The plaintiff—innocently, it would appear—took a train passing over the more indirect route, and over which, by regulation of the company, his ticket was not good.    He refused to pay fare, and was ejected.    In an action for damages the court of appeals affirmed a judgment nonsuiting the plaintiff; in its opinion saying that the company's contract was "to carry the plaintiff over the usual, through, and most direct route, and nothing more.    *    *    *    Here it must be presumed that the company were ready and willing to perform the contract as made; but the plaintiff desired to go over the Auburn road, and must have changed cars at Rochester for that purpose, and the claim for additional compensation was both lawful and just.

The rule of the company that a ticket from Canton to Artesian should be good only by way of Egan was in law a reasonable one.    The distance was less—only a few miles to be sure; but the right of a passenger to compel the company to carry him 10 miles more than he has contracted and paid for is not changed in principle by increasing the distance.    In either case he is demanding what he has not bought and paid for. The instruction complained of, however, and in which we think we find error, does not condemn the regulation as unreasonable, but says it did not control Mrs. Church's rights as a passenger unless she had knowledge of it.    It says:    "But if she did not know of such rule, and was not informed of it, she was lawfully on the train at Worthing, and the conductor had no right to put her off."    We think a rule quite inconsistent with this instruction has the support of the authorities    In Dietrich v. Railroad Co., *supra*, the court used this language:    "The authorities, as well as the reason of the thing, show that the company must make its own regulations, and that passengers purchase their tickets subject to those rules, and that it does not lie on the company to bring home notice of them in order to establish the

terms of the contract of carriage." And again, in the same opinion: "It is also well settled that one who buys a ticket is bound to inform himself of the rules and regulations of the company governing the transit and conduct of its trains." In Railroad Co. v. Randolph *supra*, the court says: "When a traveler obtains such a ticket he should inform himself as to the usual mode of travel on the road, and, so far as the customary mode of carrying passengers is reasonable, he should conform to it. * * * The requisite information can always be had from the agent where the ticket is purchased, and it is but reasonable to require passengers to obtain the information, and act upon it." In Hall v. Railroad Co., 15 Fed. 65, Hammond, J., says: It is, in my judgment, the duty of a passenger to see to it, before he takes a train, that his ticket will carry him on that train." In Cheney v. Railroad Co., 11 Metc. (Mass.) 121, the court, after noticing the form and contents of the ticket, says: "It therefore was a contract to carry in the usual manner in which passengers are carried who have tickets of that kind. It is said that the rules of the company were unknown to the plaintiff when he purchased the tickets, and therefore he ought not to be affected by them. This might be very properly insisted upon in his behalf if it were attempted to charge him with any liability created by such rules, especially if it were attempted to enforce any claim for damages by reason of them. The question as to the right of the plaintiff to be transported as a passenger does not depend upon his knowledge, at the time of the purchase of the ticket, of the difference of the price to be paid for a passage through the whole distance by one train or that of a passage by different trains. The plaintiff might have inquired, and informed himself of that. If he did not, he took the mode of conveyance the price of the ticket and the subscription thereon secured to him under the rules and regulations of the company." Johnson v. Railroad Corp., 46 N. H. 213 is to the same

effect.   The plaintiff testified:    "I had no notice, knowledge, or information that the ticket would not be taken till I attempted to use it from Manchester to Boston."   The court held that his want of knowledge did not affect his rights, or the company's duty under the contract.    The court say:    "If it is understood by the public that the duty is on the traveler to inquire as to all such reasonable regulations as it may be important for him to know, we think there will result less inconvenience than from any holding of the law that tends to relieve the traveler from the duty of inquiring as to a part of such matters of regulation."

But, even assuming that the duty lay upon the company to inform Mrs. Church that she should change cars at Canton, and that the conductor was in fault in not doing this, such neglect of duty toward a passenger might subject the company to damages, but it could not change the terms or legal effect of the contract of carriage.    Her ticket was either good by way of Mitchell and Woonsocket or it was not.    If not, and the conductor were in fault in not so informing her before reaching Canton, she mistook her remedy when she refused to pay fare, and insisted that the conductor should still further violate his duty, and expose himself to dismissal, by accepting a ticket which he was instructed not to accept.    Suppose a new conductor had taken the train at Canton; should he also, in violation of his instructions, have honored the ticket, if satisfied that she had not been notified to change at Canton?    An affirmative conclusion would be exceedingly hard to justify.    It would indorse a principle which would at once undermine and practically destroy the power of the carrier to enforce regulations which have constantly been upheld as reasonable, and which are equally essential to the carrier and the public.    Suppose Mrs. Church, originally starting from Canton had simply bought a ticket from Canton to Artesian; what would have been the contract of the company?    Clearly, to carry her over its customary and established route from the former to the

latter point. This, by a rule or regulation of the company proved upon the trial, was by way of Egan. This route gave to the traveler a continuous passage. The route by way of Mitchell and Woonsocket was longer, involved an extra change, and required nearly 24 hours' more time. It was a reasonable regulation of the company. Could she, with such a ticket, under the contract which it imported, rightfully insist upon being transported by way of Mitchell and Woonsocket, because she was not informed that her ticket was not good on these lines? If so, she would, for the same reason, on a ticket from Canton to Egan, be entitled to go by way of Mitchell, Woonsocket, and Artesian, back to Egan. We discover nothing in the evidence which could be claimed as giving her any different rights on account of her ticket being from a point further east, except that she told the uniformed employe at the Milwaukee depot that she wanted to go by way of Prairie du Chien and Mitchell, and he directed her to the proper train, without informing her that she would be required to change at Canton for Artesian, or that her ticket was not good between Canton and Artesian by way of Mitchell. We do not, however, regard this as important. The particular duty of this employe was doubtless to assist passengers to take the right train, and this he did as to Mrs. Church. He did not give her any misinformation. He simply did not advise her as to changes to be made at a junction 500 miles distant. We do not think his failure to do so, under the circumstances; affected the rights of either the defendant company or Mrs. Church. There was no evidence tending to show any usage of the company inconsistent with the regulations proved; nothing to show that passengers were ever carried by way of Mitchell and Woonsocket on tickets from Canton to Artesian; nothing to justify Mrs. Church in believing she was entitled to go that way, except that her husband wrote her she could. It is in evidence that when she went east, a few months before, she did not go from Artesian to Canton by way of Woonsocket and Mitchell, but by way of

Egan. We think the instructions of the court making the right of Mrs. Church, by virtue of her ticket, to transportation by way of Mitchell and Woonsocket to depend upon her knowledge of the rule of the company, was erroneous; and for that reason, without examining other alleged errors, its judgment is reversed, and the case is remanded for a new trial. All the judges concur.