SAMUEL BINGHAM et al., as Administrators, etc., Respondents, v. THE MARINE NATIONAL BANK OF THE CITY OF NEW YORK et al., Appellants.

*Court of Appeals, January 15, 1889.*

Affirming 41 Hun, 377.

1. *Evidence. Irrelevant on its face.*—Where evidence is offered which does not, on its face, appear to be relevant to the issues to be submitted to the jury, the court, upon an objection that it is irrelevant and immaterial, is entitled to know what it is designed to prove in order to determine whether the objections are well made, and it is the duty of the counsel offering it to point out its relevancy to the trial judge ; *otherwise it is not error to reject it.*

2. *Parties.*—An action on a contract made by persons as administrators, and arising out of dealings with money of the estate, may be brought in their names as individuals. But, by seeking to enforce the contract with the addition of their representative character, they lose no right and impose no hardship upon, as they impair no remedy of, the other contracting parties. Whether the description of the person is rejected as surplusage or retained can in no manner be important.

3. *Executors and administrators. Ancillary.*—The rights and powers of ancillary administrators are, for all the purposes of collecting the assets within the state, the same as those of administrators under general letters issued in this state.

Appeal from a judgment of the general term, affirming a judgment entered upon a verdict.

The complaint shows that one George S. Moulton died intestate on the 8th of June, 1882 ; that letters of administration upon his estate were duly issued in Connecticut, where he resided at the time, and subsequently ancillary letters were granted to the plaintiffs by the surrogate of the city and county of New York ; that they as such administrators deposited with the Marine Bank of the city of New York $50,000, and received a certificate therefor, payable

to the order of themselves on the surrender of the certificate, with interest at the rate of four per cent. per annum; the bank failed and Johnson was appointed its receiver. The defendants deny that the certificate of deposit was ever issued or delivered to the plaintiffs, and as an affirmative defense, say that one James D. Fish was president of the Marine Bank and also a member of the firm of Grant & Ward, and that the certificate was issued by Fish, "the then president of the said defendant, the Marine National Bank, without its authority and without the money in said certificate mentioned or any part thereof being at the time on deposit with the said bank to or for the credit of the said plaintiffs, or the said bank being indebted to the said plaintiffs in any sum whatever, and that said certificate was from and including the date of its issue, and now is wholly without consideration and void."

And again they say, that by a fraudulent combination between Fish and Samuel Bingham, to defraud the bank, the certificate was issued and used as a cover for Samuel Bingham to personally profit by an investment of the funds of the estate in the business of, or as a loan to the said co-partnership of Grant & Ward, and to enable him to receive interest on such loan, amounting to two per cent. a month and upwards, while there was credited to the estate by him interest at only six per cent. per annum.

After the case was opened by plaintiffs' counsel, it appeared that the action was brought by the plaintiffs as administrators appointed by the surrogate of New York, and upon that ground defendants' counsel moved the court to dismiss the complaint. The motion was denied, and the defendant excepted. The plaintiffs then put in evidence the certificate of deposit in these words:

### "THE MARINE NATIONAL BANK.

"NEW YORK, *November* 14, 1883.

"Samuel Bingham and Caroline C. Moulton, administra-

tors of estate of Geo. S. Moulton, have deposited with this bank fifty thousand dollars, payable to the order of themselves on the surrender of this certificate, with interest, at the rate of 4 per cent. per annum, provided the deposit is not withdrawn within three days.

Amount of deposit. . . . . . . . . . . . . . . . . . . . . . . . . .    $50,000
———— days interest, at ———— per cent. . . . . . . . . . .
    Total. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"JOHN D. FISH, *Cashier.*

Endorsed : Samuel Bingham, Caroline F. Moulton, administrators, estate George S. Moulton," and also the letters of administration, issued by the surrogate of the city of New York, and by the court in Connecticut, and rested.

*Charles E. Miller,* for appellants.

*Simon Sterne,* for respondents.

DANFORTH, J.—The appellants argue (1) that the mortgage from Fish to the bank and Bingham, offered in evidence by the defendants, was improperly rejected by the trial judge ; (2) that the plaintiffs have no title to the moneys represented by the certificate ; (3) that the verdict was against the clear weight and effect of evidence.

*First.* There is no apparent connection between the mortgage and the transaction upon which the jury were to pass. The certificate of deposit, issued on the 14th of November, 1883, from the Marine National Bank by John D. Fish, as cashier, to Samuel Bingham and Caroline F. Moulton, administrators, etc. The mortgage is dated the 5th of May, 1884, and runs from James D. Fish as an individual to the Bank of Mystic River, the Bank of Mystic Bridge and Samuel Bingham. The certificate recites a deposit of money by the administrators. The mortgage and indebtedness by bond to the three parties named as mortgagees, to be

paid in the order named. Upon the face of the instruments no signs of relation are to be found; if there was in fact a connection between the two, or between the transactions out of which they grew, or concerning which testimony had been given, it was the duty of the defendants' counsel to point it out to the trial judge. The objection to it as irrelevant and immaterial was distinctly made by the plaintiffs, and the court had a right to know what it was designed to prove in order to determine whether the objections were well made. If admissible only in some view not apparent from the paper itself, there was no error in rejecting it, for when no other was alluded to by counsel it could not be presumed to exist. It had not been the subject of inquiry during the trial, and as the case was presented, the mortgage, if received, was isolated and could properly have effected no other fact in evidence.

*Second.* The second ground seems rather formal than substantial. The certificate of deposit describes the parties contracting with the bank as administrators; the contract represented by it came from their dealing with money of the estate and might have been enforced in their names as individuals, but by seeking to do so with the addition of their representative character they lose no right and impose no hardship upon, as they impair no remedy of the defendants. Had the plaintiffs been defeated in the action, they would have been liable as individuals for the defendants' costs. Buckland *v.* Gallup, 105 N. Y. 453; 8 N. Y. State Rep. 56.

Moreover, the letters issued in New York were ancillary, or in aid of the letters of administration issued in Connecticut (Code Civ. Pro., § 2696), and the rights and powers of persons named therein were for all purposes in question here the same as those of administrators under general letters issued in this state. Code Civ. Pro., § 2752.

If, therefore, the plaintiffs are regarded in their different capacities as different persons, no other result could be

reached. The certificate of deposit, when produced upon the trial, bore the general and unrestricted indorsements of the payees.

It was good, therefore, either as the property of the plaintiffs as individuals or administrators under the letters issued in New York. However sued, the money recovered would belong to the estate, and whether the description of the person be rejected as surplusage or retained, could in no manner be important.

The third or remaining proposition relates to the effect of testimony. The certificate of deposit was unquestioned; it was issued, so far as its face represented, by the cashier of the bank, and there was evidence under his hand that its consideration was money actually received for the purpose stated in the certificate. It was established by Bingham's evidence, and, moreover, Fish, the president of the bank, and defendants' witness testified to the same facts. These were the two witnesses. They did not agree in regard to other matters, but the burden was on the defendants to make out the defense set forth by the answer, which, as paraphrased by the defendants' counsel, is "that this pretense of deposit was intended merely as a cover" to cheat both the bank and the estate, and if in some view it may be said to have been accomplished, there were aspects of the case fit for consideration by the jury, and the special and general terms of the supreme court, which upon the evidence required a very different conclusion.

The learned counsel for the appellants would have the testimony of Bingham discarded as incredible; surely that of Fish is in some respects fairly open to observation. If there were circumstances inconsistent with the main fact directly sworn to by either of them, it was for the jury to determine whether the fact was proved. They might indeed have rejected all the testimony of these witnesses. Becker v. Koch, 104 N. Y. 394; 5 N. Y. State Rep. 688; President, etc., v. Phillips, 109 N. Y. 383; 16 N. Y. State

Rep. 199 ) which infected the certificate of deposit, and their verdict would stand firmly upon the written evidence. It is enough, however, to dispose of this appeal, that there was not, in our opinion, such proponderance of evidence as to require the court to say that there was no question for the jury.

The judgment and order appealed from should therefore be affirmed.

All concur except PECKHAM, J., not voting.