CHARLES F. SHARP, as Administrator of the Estate of GEORGE SHARP, Deceased, Appellant, v. ERIE RAILROAD COMPANY, Respondent.

1. NEGLIGENCE — UNDISPUTED FACTS DO NOT NECESSARILY CREATE QUESTION OF LAW. In actions for personal injuries arising from negligence and in other actions sounding in tort, although the facts are undisputed, the question does not necessarily become one of law.

2. RAILROADS — NO IMMUNITY FROM LIABILITY FOR ACTS OF SERVANT BECAUSE HE IS ALSO A PUBLIC OFFICER — QUESTION FOR THE JURY. A railroad company which employs a servant to protect its tracks and

property and look after crimes committed against it and its right of way, acquires no immunity for the acts of such servant, within the scope of his employment, from the fact that the servant happens to be a constable, policeman or other public officer. It is not beyond the province of a jury in such a case to find that the official acts of the employee are to be used for the benefit of the defendant and in protection of its interests or property ; and hence the character of the servant's act is to be determined in the same way and upon the same principles as if he was not a public officer at all ; if he acts maliciously or in pursuit of some purpose of his own, the defendant is not bound by his conduct, but if, while acting within the general scope of his employment, he simply disregards his master's orders or exceeds his powers, the master will be responsible for his conduct.

3. SAME. Where a boy, who had been stealing a ride upon a freight train of a railroad company and had jumped from the train, was pursued by a detective employed by the company to keep tramps and trespassers from its trains and yards, and was followed by him out of the yard and across land adjacent thereto to a point about one hundred feet distant therefrom where he was killed by a shot fired by the detective, who was also outside the yard and about fifty feet behind him, it is for the jury to determine, upon the trial of an action against the company to recover damages for the death of the boy, whether the detective acted within the scope of his employment, or whether, being a public officer, he acted in that capacity alone.

4. WITNESS — CREDIBILITY OF, A QUESTION OF FACT. The fact that, after testifying for the plaintiff as to the circumstances resulting in the shooting, the detective on cross-examination testified to facts in the nature of an excuse for his own conduct, which facts were undisputed, does not authorize the court to take the case from the jury, since the question of the credibility of the witness still remained for its determination.

*Sharp* v. *Erie R. R. Co.*, 90 App. Div. 502, reversed.

(Argued January 25, 1906; decided February 13, 1906.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered March 29, 1904, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*David C. Robinson* and *Frank C. Ogden* for appellant. The nonsuit was error, and there are no grounds on which it can be sustained. (*Rounds* v. *D., L. & W. R. R. Co.*, 64

N. Y. 129; *Lynch* v. *Met. El. R. R. Co.,* 90 N. Y. 77; *Cohen* v. *D. D., E. B. & B. R. R. Co.,* 69 N. Y. 170; *Peck* v. *N. Y. C. & H. R. R. R. Co.,* 70 N. Y. 587; *Hoffman* v. *N. Y. C. & H. R. R. R. Co.,* 87 N. Y. 25; *Kastner* v. *L. I. R. R. Co.,* 76 App. Div. 323.) Plaintiff should have been allowed to go to the jury on the testimony of Wheeler, who was an interested witness. His credibility was for the jury. (*Becker* v. *Koch,* 104 N. Y. 394; *Manhattan Co.* v. *Phillips,* 109 N. Y. 383; *Cross* v. *Cross,* 108 N. Y. 628; *Wohlfahrt* v. *Beckert,* 92 N. Y. 490; *Govin* v. *De Miranda,* 140 N. Y. 666; *Dean* v. *M. E. R. Co.,* 119 N. Y. 540; *Connelly* v. *C. V. R. R. Co.,* 4 App. Div. 221; *Hoes* v. *T. A. R. R. Co.* 5 App. Div. 151; *Kennedy* v. *McAllaster,* 31 App. Div. 458; *Elwood* v. *W. U. T. Co.,* 45 N. Y. 549; *Kavanagh* v. *Wilson,* 70 N. Y. 177; *Gildersleeve* v. *Landon,* 73 N. Y. 609.)

*Frederick Collin* for respondent. The nonsuit was proper. (*Mott* v. *C. I. Co.,* 73 N. Y. 543; *Rounds* v. *D., L. & W. R. R. Co.,* 64 N. Y. 129; *Girvin* v. *N. Y. C. & H. R. R. R. Co.,* 166 N. Y. 289; 2 Wood's Railway Law, 1212, 1213; *Gilliam* v. *Railroad Co.,* 70 Ala. 268; *Tolchester Beach Imp. Co.* v. *Steinmeier,* 72 Md. 313, 319; *Dolan* v. *Hubinger,* 109 Iowa, 408; *Central Ry. Co.* v. *Peacock,* 59 Md. 257; *McGilray* v. *Railway,* 164 Mass. 122; *Palmer* v. *Weston-Salem Ry. & Electric Co.,* 131 N. C. 250; *Southern Pac. Co.* v. *Kennedy,* 29 S. W. Rep. 394.) Plaintiff's contention that he should have been allowed to go to the jury upon the testimony of Wheeler cannot be sustained. (*Becker* v. *Koch,* 114 N. Y. 394; *Cross* v. *Cross,* 108 N. Y. 628; *Manhattan Co.* v. *Phillips,* 109 N. Y. 383; *Ray* v. *E. L. Assur. Society,* 16 App. Div. 194; *Hull* v. *Littauer,* 162 N. Y. 569; *Johnson* v. *N. Y. C. & H. R. R. R. Co.,* 173 N. Y. 79; *Wohlfahrt* v. *Beckert,* 92 N. Y. 490.)

O'BRIEN, J. The plaintiff's intestate, a boy about seventeen years of age, was shot and killed on the 16th of May, 1901, by a man named Wheeler, at Salamanca. The boy, with

one or two companions, got upon one of defendant's freight cars at Elmira for the purpose of stealing a ride. They were running away from their homes and their destination was Youngstown, Ohio. When the train arrived at Salamanca, some sixty miles west, it appears that three men shouted to them that there were detectives in the yard and they proceeded to get off as quickly as possible. They jumped from the moving train and were pursued by Wheeler along the railroad track for some distance to the west, when the boy turned at right angles and passed to the adjacent land through an open gate. The pursuit was continued by Wheeler for about fifty feet on the adjoining land and when the boy, being ahead of him, was about one hundred feet from the railroad premises Wheeler drew a pistol and fired at him, the ball entering the back of his head, producing death.

The question in this case is whether the defendant can be held responsible for the act of Wheeler in killing the boy. It is claimed that Wheeler acted in a dual capacity; that while he was the servant of the defendant for certain purposes he was also a public officer, and that he killed the boy while acting in the capacity of such officer and not as the servant of the defendant. It is important to know at this stage of the discussion just what Wheeler's relations to the defendant were. There does not seem to be any dispute in regard to the scope of his employment. He was paid fifty dollars a month by the defendant and his duties were to protect the company's interests on the right of way; to keep tramps from trains and look after robberies that might occur at stations and on freight cars in the yards and on the tracks and in the station and look after persons in an intoxicated condition on the company's property, and generally to look after crimes committed against the railroad company on the right of way. It was part of his duty to drive off and keep off trespassers from the company's property. His duty was not limited to keeping trespassers off the trains where it was to the company's interest to keep them out of the yard. That was largely committed to his discretion.

It will be observed that there is no conflict in the testimony nor any dispute about the facts and it is argued by the learned counsel for the defendant that in such cases the question becomes one of law for the court and there is nothing for the jury to pass upon. That was the view taken by the learned courts below. The plaintiff was nonsuited and the Appellate Division affirmed the judgment. It is argued that the moment Wheeler passed beyond the boundaries of the defendant's premises onto the adjoining lot where the deceased was killed he was no longer acting as the defendant's servant but was pursuing and seeking to arrest the boy who had committed or was engaged in the commission of a crime. It will be noted that the pursuit commenced when the deceased jumped from the car and was continuous until the shooting occurred. So the question is whether, at the time that Wheeler fired the fatal shot, he was acting as the defendant's servant or as a public officer, and further, whether that question was one of law for the court or of fact for the jury.

In actions for personal injuries arising from negligence, and in other actions sounding in tort, it is far from correct to assert that when the facts are undisputed the question becomes one of law. Whether the undisputed facts impute negligence is for the jury, when the circumstances are such that men of ordinary prudence and discretion might differ as to the character of the acts under the circumstances of the case, or whether the inferences to be drawn from or the significance to be attached to the testimony are doubtful. (1 Thomas on Negligence, p. 673.) A recent author who has written much on the law of negligence states the rule in these words: " It is obviously a question of fact for the determination of a jury whether, at the time of the particular act or omission by the servant which caused the injury the plaintiff's servant was acting within the scope of his employment or acting outside of it to effect some purpose of his own. Upon such a question the verdict of a jury will be conclusive. * * * Whether the person whose immediate negligence or misconduct caused the particular injury was acting at the time as the servant of

the person sought to be charged frequently depends on such a variety of facts that it falls outside of any definite rule, and for that reason becomes, under proper instructions, a question of fact for the jury." (1 Thompson on Negligence, §§ 615, 616.) The circumstances of this case, it seems to me, presented a question of the same general character. Did Wheeler, at the moment that he fired the fatal shot, put off his character as a servant of the defendant and put on another and different character, namely, the powers and duties of a public officer? Does the fact that he crossed the boundary line of the defendant's premises in pursuit of the boy make the question one of law? If it be a question of law the principle would be the same whether he had passed the boundary line by the distance of two feet instead of fifty. It is obvious that there is no rule or principle of law to determine such a question, and hence it belonged to the jury.

It has been frequently decided by this court that cases almost identical in their facts must be determined by the jury when the testimony is of the same character as that in the case at bar. (*Rounds* v. *D., L. & W. R. R. Co.*, 64 N. Y. 129; *Lynch* v. *Met. El. R. R. Co.*, 90 N. Y. 77; *Cohen* v. *Dry Dock, etc., R. R. Co.*, 69 N. Y. 170; *Peck* v. *N. Y. C. & H. R. R. R. Co.*, 70 N. Y. 587; *Hoffman* v. *N. Y. C. & H. R. R. R. Co.*, 87 N. Y. 25.)

These cases and other cases on the same subject were reviewed and approved in a very recent case in this court, which is almost identical in its facts with the case at bar. (*Magar* v. *Hammond*, 183 N. Y. 387.) It was there held that the defendant would be liable for the act of Wheeler if he was engaged within the general scope of his employment, and whether he was so engaged or was seeking to effect some purpose of his own was a question of fact for the jury.

A railroad company employing a servant who happens to be a public officer acquires no immunity from such employment. Constables and policemen are often employed by corporations in the same capacity as Wheeler was. It is not beyond the

province of a jury in such a case to find that the official acts of the employee are to be used for the benefit of the defendant and in protection of its interests or property. And, hence, in such a case the character of the servant's act is to be determined in the same way and upon the same principles as if he was not a public officer at all. If he acts maliciously or in pursuit of some purpose of his own, the defendant is not bound by his conduct, but if, while acting within the general scope of his employment, he simply disregards his master's orders or exceeds his powers, the master will be responsible for his conduct.

There was no proof in this case that Wheeler was a public officer, except his own statement given upon the examination of the defendant's counsel. It seems that the plaintiff's counsel called him as a witness to prove the facts resulting in the shooting of the boy, and upon the defendant's cross-examination he testified to his official character without producing any written or record evidence of the fact. The rule in such cases seems to be that where one of the parties to an action calls his opponent as a witness and proves by him facts tending to sustain his case, and such witness in his own behalf afterwards gives an explanation of the circumstances which, if true, repels the idea of liability on the part of the defendant, and though such explanation is not disputed by other evidence, this does not authorize the court to take the case from the jury; it is for them to determine what degree of faith is to be given to the explanatory testimony. Wheeler was undoubtedly an interested witness. He testified to facts necessary to the plaintiff's case and then testified to facts in the nature of an excuse for his own conduct, and although the excuse was not affected by any other evidence, still his credibility was for the jury. (*Becker* v. *Koch*, 104 N. Y. 394; *Manhattan Co.* v. *Phillips*, 109 N. Y. 383; *Cross* v. *Cross*, 108 N. Y. 628.)

It follows that it was for the jury to determine whether Wheeler acted within the scope of his employment, or whether, being a public officer, he acted in that capacity

alone.   For these reason I think the judgment should be reversed and a new trial granted, costs to abide the event.

CULLEN, Ch. J., EDWARD T. BARTLETT, WERNER and HIS-COCK, JJ., concur.   GRAY, J., dissents on the ground that as the plaintiff had shown Wheeler to be a local police officer, constable and deputy sheriff, and that the assault upon the boy was not committed upon the defendant's premises, his act was necessarily that of an officer of the law.   Hence the nonsuit was right.   Not sitting, CHASE, J.

Judgment reversed, etc.