### BREWSTER v. INTERBOROUGH RAPID TRANSIT CO.

(Supreme Court, Appellate Term.   July 1, 1910.)

1. CARRIERS (§ 317*)—INJURIES TO PASSENGERS—EVIDENCE.

In an action for assault on one waiting to take passage on a car, by a special officer appointed at the request of the carrier to maintain order at the station platform, whose salary was paid by the carrier, evidence of the directions of the carrier's superintendent to the special officer, and his precise duties, was admissible.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 317.*]

2. CARRIERS (§ 283*)—INJURIES TO PASSENGERS—ACTS OF CARRIER'S SERVANT—SPECIAL OFFICER.

A special officer, appointed at the request of a carrier to maintain order at station platforms, whose shield and cap were paid for by the carrier, and whose wages were paid by it, was its employé, for whose acts towards a passenger the carrier is liable.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1119; Dec. Dig. § 283.*]

3. CARRIERS (§ 283*)—INJURIES TO PASSENGER—ACTS OF EMPLOYÉS—SCOPE OF EMPLOYMENT.

Where an employé of a carrier warned plaintiff, waiting on a station platform, not to push or he would smash his head, and plaintiff told him to go ahead and do it, whereupon the employé knocked plaintiff down, the carrier is liable for the employé's acts, and cannot avoid liability on the plea that they were not within the scope of his employment.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1121; Dec. Dig. § 283.*]

4. CARRIERS (§ 283*)—INJURIES TO PASSENGERS—DUTIES OF CARRIER.

A common carrier owes a duty to passengers that its employés shall treat them in a decent manner and protect them from attack.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1121; Dec. Dig. § 283.*]

5. TRIAL (§ 165*)—TAKING CASE FROM JURY—DISMISSAL.

On motion to dismiss a complaint at the close of plaintiff's case, plaintiff is entitled to the most favorable inferences to be drawn from the evidence.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 374; Dec. Dig. § 165.*]

6. CARRIERS (§ 320*)—INJURIES TO PASSENGERS—ACTS OF EMPLOYÉS—JUSTIFICATION—QUESTION FOR JURY.

Where a special officer warned plaintiff, a passenger waiting on the station platform, not to push or he would smash his head, plaintiff's reply, "Go ahead and do it," did not as matter of law justify an assault by the officer.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 320.*]

Appeal from City Court of New York, Trial Term.

Action by Barnett Brewster against the Interborough Rapid Transit Company.   From a judgment dismissing the complaint at the close of plaintiff's case, he appeals.   Reversed, and new trial ordered.

Argued before SEABURY, GUY, and BIJUR, JJ.

Stuart G. Gibboney, for appellant.

James L. Quackenbush (B. H. Ames and John Montgomery, of counsel), for respondent.

SEABURY, J.    The complaint sets forth two causes of action—the first for an assault committed on the plaintiff by the defendant's servant, and the second for malicious prosecution.   The plaintiff, who was a tailor by trade, on his way home from work, entered the elevated station of the defendant at Third avenue and Eighteenth street. He had paid for his ticket, and dropped it in the box, and was standing on the platform waiting to board a car.   The evidence shows that a special officer named Kellerman said to the plaintiff: "If you keep on pushing, I will smash your head off."   The plaintiff replied: "Go ahead and do it."   Kellerman then struck the plaintiff in the face, grabbed him, and clubbed him over the head.   Plaintiff was knocked down.   His head was split open and covered with blood.   The court below dismissed the complaint, on the ground that, Kellerman being a special officer, the defendant was not liable for his acts.

It appears that Kellerman was appointed a special officer upon the request of the defendant, who in its application stated that it was necessary that a special officer should be appointed "to maintain order on station platforms and for the protection of life and property."   The defendant paid for Kellerman's shield and cap, and also paid him his salary.   Kellerman was assigned to the Eighteenth street station by the defendant's superintendent.   The plaintiff attempted to show in greater detail the directions which the defendant's superintendent had given Kellerman, and more precisely what his duties were.   This evidence was excluded by the trial court.   The evidence sought to be introduced was admissible, and was improperly excluded.

Even in the absence of such evidence, we think that it was error to dismiss the complaint.   Kellerman was primarily an employé of the defendant, and the fact that incidentally he was a public officer did not relieve the defendant from responsibility for his acts.   The defendant selected him, caused him to be designated a "special officer," paid his salary, assigned him to work, and required him to do that which it was under a duty to perform.   I do not understand that the fact that Kellerman was a "special officer" gave him any greater authority than he would have had, if he had been merely an employé of the defendant.   If Kellerman had been merely an employé of the defendant, there is no doubt that, upon the evidence disclosed, the defendant would be liable for his acts.   Nor could it under such circumstances avoid liability upon the plea that Kellerman's acts were not within the scope of his employment.

The defendant, as a common carrier, owed a duty to its passengers that its employés should treat them in a decent manner and protect them from attack.   Where the employé of a common carrier violates this rule and commits an assault upon a passenger, the carrier is liable.   Busch v. Interborough Rapid Transit Company, 187 N. Y. 388, 392, 80 N. E. 197.   Nor does the fact that Kellerman was a "special officer" in any way alter the situation or relieve the defendant from its liability.   It would be preposterous to hold that, because the defendant caused its employé to be designated as a "special officer," it was thereby relieved of responsibility for his acts.   If, by virtue of his designation as a special officer, Kellerman became a public official,

his duty to the public was thereby increased; but the defendant was not relieved from the same responsibility for his acts that it would be under for the acts of any other of its employés. It would, indeed, be an anomaly if the fact that, because the public power had been used to designate the employé of the defendant a public officer, the defendant should on this account be relieved of responsibility for the acts which its employé performs in attempting to discharge his duties to it.

In Sharp v. Erie R. R. Co., 184 N. Y. 100, 76 N. E. 923, the defendant was held liable for the act of a special officer employed by it to protect its yards in shooting a boy who was stealing a ride. In that case the court said:

"A railroad company, employing a servant who happens to be a public officer, acquires no immunity from such employment. Constables and policemen are often employed by corporations in the same capacity as Wheeler was. It is not beyond the province of a jury in such a case to find that the official acts of the employé are to be used for the benefit of the defendant and in protection of its interests or property. And hence in such a case the character of the servant's act is to be determined in the same way and upon the same principles as if he was not a public officer at all."

The contention of the defendant that the assault was provoked by the plaintiff, and that therefore the defendant is not liable, even if the officer was acting within the scope of his employment as defendant's servant, finds no support in the record. Upon the motion to dismiss the complaint the plaintiff was entitled to the most favorable inferences to be drawn from the evidence. The court clearly erred in taking the case from the jury. Nor can the reply of plaintiff to the threat of Kellerman, "Go ahead and do it," be held to constitute justification as a matter of law for the assault which was committed. Railroad corporations are supposed to be in a sense public servants. Their employés are supposed to promote the convenience of the public. It would indeed be a parody upon justice if a passenger, grossly assaulted, as the plaintiff appears to have been, could not even have his case submitted to a jury.

Judgment reversed, and new trial ordered, with costs to the appellant to abide the event. All concur.