## ISPASS et al. v. PYRAMID MOTOR FREIGHT CORPORATION.

District Court, S. D. New York.

Jan. 12, 1945.

342

Leon E. Spielvogel and Ramey & Mc-Kelvey, all of New York City, for plaintiffs.

Charles E. Cotterill, of New York City, for defendant.

JAMES ALGER FEE, District Judge.

This is an action by certain employees against a common carrier by motor in interstate commerce to recover overtime claimed to be due under the provisions of the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. The court held that there was a technical administrative question involved which must be determined by the Interstate Commerce Commission before a judgment could be rendered for plaintiffs.[1] However, summary judgment of dismissal was not entered and opportunity was given to plaintiffs to present the question to the Commission.

Now, plaintiffs have filed a motion which may be treated as an election not to present the technical question to the Commission, nor to present further pleadings or proofs. No showing has been made to the court that plaintiffs were not employees for whom the Commission may have jurisdiction to prescribe maximum hours of service. There is no showing that the Commission has excluded plaintiffs, or the classes of employees to which each respectively belongs, from the circle of jurisdiction.

Careful explanation of the action of the court was made in the first opinion in this case, but review of the reasons now seems necessary to avoid misconception. It is contended that in each action of this sort the court must primarily pass upon the question of whether the duties of a particular plaintiff tend "to promote safety of operation" of the motor vehicles involved. But Congress invested the Commission with power to determine that exact question because safety of operation is a "characteristic of transportation" and "inherent in that industry."[2]

The Supreme Court of the United States determined that the Interstate Commerce Commission and the Wages and Hours Division of the Department of La-

---

[1] Ispass v. Pyramid Motor Freight Corporation, D.C., 54 F.Supp. 565.

[2] 13 M.C.C. 481, 489.

bor were correct in holding that the Commission had the power to establish reasonable requirements with respect to the qualifications and maximum hours of service of employees of motor carriers only as to those employees whose duties affect safety of operation. But the Supreme Court did not undertake to pass upon the question of which specific employees performed duties which did affect safety of operation. Nor was this authority committed to other courts, but was lodged in the Commission primarily.[3] We need not debate whether there is a syncretism between the doctrine of "exhaustion of administrative remedies"[4] and the doctrine of "primary jurisdiction",[5] nor discover how far such doctrines were fused.[6] It is sufficient to say that the question before the court "demands the exercise of sound administrative discretion requiring the special knowledge, experience, and services of the administrative tribunal to determine technical and intricate matters of fact, and a uniformity of ruling is essential to comply with the purposes of the regulatory statutes administered."[7]

In this field, factual distinctions exist between the conductorette and the dispatcher, the armed guard and the car oiler, the ordinary mechanic and the tarpaulin tailor.[8] The courts should not be required to accept the responsibility of such initial determinations. The courts are entitled to the assistance of specialized tribunals for a primary sifting of problems of a technical genesis which result from the complicated nature of an industrialized society.[9] These related doctrines developed out of the attempt of the courts to obtain expert aid in the solution of such technological situations.[10]

The very crux of this case is the determination, on an involved set of facts, of whether the duties of plaintiffs, or any of them, tend to promote safety of operation of loading and unloading of the vehicles on which they work. The court might perhaps make the correct determination. If it be a duty to decide, the court would have no hesitation. But there should be hesitation in entering the limits of a field which Congress has expressly, and the Supreme Court impliedly, said is too technical to permit of solution by usual rules. Here the answer as to jurisdiction of the Commission and the ultimate solution of the status of the employees are identical. Each depends upon a state of facts which requires technical appraisal for evaluation.[11]

As was pointed out in the previous opinion, a single District Judge should not be so greedy of jurisdiction as to attempt to solve such problems contrary to well established canons of public administrative law. If a breach is to be made in this wall, it should be accomplished by the higher appellate courts.[12]

---

[3] The effect of a finding of the Commission is not germane to the present discussion.

[4] "The fact that some sort of administrative determination has been made obviously places no barriers across related legislative pathways which remain untrodden." Vom Baur, Federal Administrative Law, Vol. I, § 227.

[5] "Keystone of the arch of administrative regulation is the 'primary jurisdiction' rule." Harv.Law Rev., Vol. 51, p. 1251.

[6] "In both its aspects, exclusive jurisdiction and exhaustion of remedy, it promotes expert analysis and uniform determination of questions of administrative discretion, and through judicial self-limitation it avoids premature interference with the process of administrative regulation." Harv.Law Rev., Vol. 51, p. 1267.

[7] 42 Am.Jur. § 254.

[8] 13 M.C.C. 481.

[9] Raoul Berger, "Exhaustion of Administrative Remedies", Yale Law J., April 1939, No. 6, Volume 48, pp. 981–1606.

[10] The application of such doctrines was authoritatively made in the Abilene case, Texas & Pacific Ry. Co. v. Abilene Cotton Oil Co., 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553, 9 Ann.Cas. 1075, a rate case cited in the former opinion, but ramifications are now met in all fields. "Railroad regulation developed the doctrine, public utility regulation expanded it, tax litigation extended it, and now the rapidly enlarging fields of labor and industrial regulation have adopted it." Harv. Law Rev., Vol. 51, p. 1252. Cf. Mitchell v. United States, 313 U.S. 80, 61 S.Ct. 873, 85 L.Ed. 1201.

[11] Any implications from Crowell v. Benson, 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598, are not controlling. See Myers v. Bethlehem Shipbuilding Corporation, 303 U.S. 41, 50, 51, 58 S.Ct. 459, 82 L.Ed. 638.

[12] "The logic of the development of the rule demands a crystallization of its non-discretionary nature in all branches of

This cause should, therefore, not be determined on the basis of the affirmative in the pleadings, nor the incidence of the burden of proof. Nor should a determination be based upon the question of whether a technical exemption is created by the statute as a result of which the proof of the fact that a plaintiff performs work which promotes the safety of the operation of the motor vehicles falls upon defendant.

■ Instead, we must assume a position diametrically opposite. We follow the principle that where the creation of a class is left to one administrative body, or any determination of fact involving technical capacity is so delegated, such questions should be there determined before this court proceed to judgment.

■ The court does not lose jurisdiction because the administrative remedy has not been pursued, but on the other hand, the court need not proceed to a determination until the administrative question be resolved by the appropriate authority.[13]

It is urged vociferously that the court has adopted novel and exotic procedure in this cause to the detriment of plaintiffs. On the contrary the course pursued has been standardized to the point where it can almost be called exclusive. There are two standard methods of disposal of this type of case. In the article on Public Administrative Law in American Jurisprudence [14] it is said:

"In applying the doctrine of primary jurisdiction, the court may dismiss the complaint where the question involves an administrative question necessitating primary resort to the administrative tribunal.[15] However, the presence of such an administrative question does not deprive the court of jurisdiction,[16] and where there are rights which may be saved by retaining the cause, the court should do so but stay its hand pending the administrative determination." [17]

■ In the first opinion, the court, conceiving that the plaintiffs had rights which might be saved by retention of the cause, stayed its hand. Since that course of action has provoked violent attacks by plaintiffs,[18] the court now dismisses the action.

the doctrine. * * * Were the exhaustion requirement rigorously applied in each instance, much of this wasteful litigation would soon be cut off at the source." Raoul Berger, "Exhaustion of Administrative Remedies", Yale Law J., April 1939, No. 6, Volume 48, 981, 1006.

[13] 42 Am.Jur. 699, n. 20; Board of Railroad Com'rs v. Great Northern Ry. Co., 281 U.S. 412, 50 S.Ct. 391, 74 L. Ed. 936; Great Northern Ry. Co. v. Merchants' Elevator Co., 259 U.S. 285, 42 S.Ct. 477, 66 L.Ed. 943.

[14] 42 Am.Jur., p. 702, Public Administrative Law, § 254.

[15] Citing Armour & Co. v. Alton R. Co., 312 U.S. 195, 61 S.Ct. 498, 85 L.Ed. 771; St. Louis, B. & M. R. Co. v. Brownsville Nav. Dist., 304 U.S. 295, 58 S.Ct.

868, 82 L.Ed. 1357, rehearing denied in 305 U.S. 668, 59 S.Ct. 55, 83 L.Ed. 433; Campbell v. Milwaukee Electric R. & Light Co., 169 Wis. 171; 170 N.W. 937, 6 A.L.R. 628.

[16] Citing General American Tank Car Corp. v. El Dorado Terminal Co., 308 U.S. 422, 60 S.Ct. 325, 84 L.Ed. 361, rehearing denied in 309 U.S. 694, 60 S.Ct. 465, 84 L.Ed. 1035.

[17] Citing General American Tank Car Corp. v. El Dorado Terminal Co., 308 U.S. 422, 60 S.Ct. 325, 84 L.Ed. 361, rehearing denied in 309 U.S. 694, 60 S. Ct. 465, 84 L.Ed. 1035; Mitchell Coal & Coke Co. v. Pennsylvania R. Co., 230 U.S. 247, 33 S.Ct. 916, 57 L.Ed. 1472.

[18] This note to the original opinion is omitted from publication by direction of the writer.